UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Type text here

DAMION BELL,

          Petitioner,

v.

MICHAEL BURGESS,

          Respondent.

_____/

Case No. 1:23-cv-813

Honorable Robert J. Jonker

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Damion Bell is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a(2). On September 25, 2018, the circuit court sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to a term of 13 to 60 years' incarceration.

On July 31, 2023, Petitioner filed his habeas corpus petition raising ten grounds for relief, as follows:

> I.      Petitioner was denied his state and federal constitution[al] due process rights where his conviction for home invasion first-degree is not supported by evidence sufficient to establish his guilt beyond a reasonable doubt.

> II.     Trial counsel rendered ineffective assistance of counsel by failing to request a lesser-included offense instruction, which denied Petitioner his right to a fair trial, his right to present a defense, and his right to a properly instructed jury.

III.    Petitioner was denied effective assistance of counsel and a fair trial by his attorney's admission of his guilt on the charged offenses.

IV.    Due process requires reinstating a favorable plea offer with a 36 month to 106 months sentencing agreement where trial counsel failed to advise her successor that Petitioner wrote her a letter informing her he wanted to accept the plea offer.

V.    Petitioner argues that reading Officer Garnsey's police report [in] lieu of requiring his live testimony violated his right of confrontation under the Sixth Amendment to the United States Constitution; in the alternative, Petitioner was denied his right to effective assistance of counsel.

VI.    Petitioner was denied his state and federal constitutional right to the effective assistance of counsel at trial, where defense counsel failed to[:] A) secure the presence of Cherries Stubbs[,] a critical prosecution eye witness, and failed to request on the record a continuance to locate and produce Ms. Stubbs.

VII.    Petitioner is entitled to resentenc[ing] because the trial court improperly departed from the sentencing guidelines by taking into account factors already includ[ed] within the guidelines calculations.

VIII.    The prosecutor violated Petitioner's due process rights by charging Appellant with first degree home invasion after Petitioner refused to waive a preliminary examination and plead guilty to second-degree home invasion; furthermore, defense counsel was constitutionally ineffective in failing to object.

IX.    Petitioner was denied the effective assistance of counsel guaranteed by the federal constitution where his appellate counsel neglected strong and critical issues which must be seen as significant and obvious.

X.    The prosecutor denied Petitioner a fair trial by failing to exercise due d[i]ligence to produce a crucial, endorsed witness; the trial court failed to conduct a due diligence hearing; and defense counsel was ineffective for failing to request a hearing or dismissal of the case, and failing to object to the omission of the missing witness instruction.

(Pet., ECF No. 1, PageID.13, 17, 20, 23, 28, 40, 45, 49. 53, 56.) Respondent contends that

Petitioner's grounds for relief are meritless. (ECF No. 9.)[1] For the following reasons, the Court

_____

[1] Respondent also contends that several of Petitioner's grounds for relief are procedurally defaulted. (ECF No. 9, PageID.168–69.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore,

concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and

will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.    Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as

follows:

> On December 15, 2017, Bell got into an argument with Bernadette Scott and she
> told him to leave her apartment. She locked the door after he left, but Bell returned
> around 10:30 p.m., asking about his hat. He entered the apartment and, after
> approximately one minute, he left. Scott locked the door again, and when Bell came
> back a second time she did not open the door. Bell kicked the closed door two times
> and walked away, so Scott opened the door and told him to stop kicking her door.
> She then went back inside her apartment. Video surveillance from the apartment
> complex hallway shows Bell pace back and forth a few times, stand in front of
> Scott's door, and kick the door seven times. His kicks broke the lock and doorframe
> and he entered the apartment without Scott's permission. She testified that Bell
> "started throwing stuff around, looking for the hat he said he lost, and then I was
> attacked." She stated that he punched and scratched her, but she later clarified that
> at that time he only scratched her neck. Bell eventually left the apartment. Yet, after
> approximately 10 seconds, he came back again. The surveillance video depicts him
> pushing her into the apartment, and Scott testified that at that point he punched,
> scratched, and grabbed her. Bell left once more, and this time he did not return.

*People v. Bell*, No. 345825, 2020 WL 504868, at \*1 (Mich. Ct. App. Jan. 30, 2020).

Petitioner appeared before the district court for a preliminary examination on January 2,

2018. (ECF No. 10-2.) At the outset, the prosecutor informed the court that he had made an offer

---

the Supreme Court has held that federal courts are not required to address a procedural default
issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525
(1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it
were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved
complicated issues of state law."); *see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir.
2020) ("Although procedural default often appears as a preliminary question, we may decide the
merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S.
at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here,
rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy
favors proceeding directly to a discussion of the merits of Petitioner's claims.

for Petitioner to plead guilty to third-degree home invasion in exchange for dismissal of the "original charge of home invasion second degree and the supplemental information." (*Id.*, PageID.271.) The prosecutor noted that a conviction on third-degree home invasion "carrie[d] a maximum penalty of five years." (*Id.*) He stated further that if the parties went ahead with the preliminary examination, "the facts may be elicited that support a charge of home invasion first degree, which would be an even greater penalty." (*Id.*)

In response, Petitioner's attorney indicated that Petitioner wanted to reject the plea offer and did not want to waive his preliminary examination. (*Id.*, PageID.272.) Following testimony, the district court concluded that there was "probable cause to satisfy the elements of home invasion in the second degree" and bound the matter over to the circuit court. (*Id.*, PageID.285–286.)

Shortly thereafter, the parties appeared before the circuit court for a status conference on February 7, 2018. (ECF No. 10-3.) At that time, the prosecutor indicated that the State had made an offer for Petitioner to plead guilty to second-degree home invasion as a third habitual offender in exchange for dismissal of the fourth-offense habitual offender notice. (*Id.*, PageID.290.) The prosecutor also noted that if Petitioner accepted the offer, the "People would not amend this to be a home invasion in the first degree." (*Id.*) The prosecutor, however, stated that it was his understanding that Petitioner was rejecting that offer. (*Id.*) Ultimately, the court granted defense counsel's request for a two-week adjournment so that she could "go out to the jail and have [Petitioner] view some additional evidence." (*Id.*, PageID.292.)

The parties continued the status conference on March 7, 2018. (ECF No. 10-4.) The prosecutor indicated that if Petitioner rejected the plea offer, the "People will amend Count 1 to reflect a home invasion in the first degree." (*Id.*, PageID.297.) The prosecutor set forth that if Petitioner accepted the offer, his guidelines would call for 36 to 106 months of incarceration. (*Id.*)

If he rejected the offer and was subsequently convicted of first-degree home invasion, Petitioner's guidelines would then call for 78 to 260 months of incarceration. (*Id.*) Defense counsel represented that Petitioner did not wish to accept the offer and wanted to proceed to trial. (*Id.*, PageID.298.)

Subsequently, the trial court granted defense counsel's motion to withdraw from representing Petitioner due to a breakdown in the attorney-client relationship, and new counsel was appointed to represent Petitioner. (ECF No. 10-5.) The parties then appeared before the trial court for a hearing regarding the State's motion to amend and Petitioner's motion to quash on June 22, 2018. (ECF No. 10-6.) The prosecutor represented that he was seeking to amend the "current home invasion second degree to properly reflect what [he] believe[d] the testimony at the preliminary exam supported, which was a home invasion in the first degree." (*Id.*, PageID.311.) In response, defense counsel argued that the original bindover on second-degree home invasion was not appropriate because Petitioner was lawfully at the residence at issue. (*Id.*, PageID.312.) Ultimately, the trial court granted the motion to amend and denied the motion to quash. (*Id.*, PageID.314.)

Jury selection for Petitioner's trial occurred on September 4, 2018. (Trial Tr. I, ECF No. 10-7.) On September 5, 2018, the jury heard testimony from Scott and Officer Phillip Reinink. (Trial Tr. II, ECF No. 10-8, PageID.393.) That same day, after only 19 minutes of deliberation, the jury reached a guilty verdict. (*Id.*, PageID.482–483.) Petitioner appeared before the trial court for sentencing on September 25, 2018. (ECF No. 10-10.)

Petitioner, with the assistance of appellate counsel, appealed his conviction and sentence to the Michigan Court of Appeals. In a counseled brief, Petitioner raised what he now asserts as habeas grounds I and II. (ECF No. 10-13, PageID.715.) In a *pro per* supplemental brief, Petitioner raised the following claims for relief: (1) the trial court lacked subject-matter jurisdiction after the

information was amended because Petitioner was not charged with assault as an underlying offense; (2) Petitioner was denied counsel at a critical stage when he had a stand-in attorney at his status conference; (3) counsel erroneously conceded that Petitioner was guilty of the crime charge; (4) Petitioner's conviction for first-degree home invasion was not supported because Petitioner was not charged with assault as the underlying crime; (5) counsel was ineffective for failing to properly inform Petitioner of a plea offer; and (6) the court violated Petitioner's due process rights and his right to a fair trial. (*Id.*, PageID.763.) The court of appeals affirmed Petitioner's conviction and sentence on January 30, 2020. *See Bell*, 2020 WL 504868, at *1. The Michigan Supreme Court denied Petitioner's *pro per* application for leave to appeal on September 8, 2020. *See People v. Bell*, 947 N.W.2d 810 (Mich. 2020).

Petitioner then returned to the trial court and filed a motion for relief from judgment pursuant to Michigan Court Rule 6.500. (ECF No. 10-11.) In that motion, Petitioner raised what he now asserts as habeas grounds IV through X. (*Id.*) The trial court denied Petitioner's Rule 6.500 motion in an opinion and order entered on March 30, 2022. (ECF No. 10-12.) The court of appeals and supreme court denied Petitioner's applications for leave to appeal on December 28, 2022, and May 30, 2023, respectively. (ECF Nos. 10-14, PageID.858; 10-16, PageID.1055.) This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the

6

Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the

underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III. Discussion

### A. Ground I—Sufficiency of the Evidence

As his first ground for relief, Petitioner contends that his conviction for first-degree home invasion was not supported by sufficient evidence. (Pet., ECF No. 1, PageID.13.) Specifically, Petitioner contends that there was insufficient evidence because the State did not prove that Petitioner had the requisite intent to commit a felony, larceny, or assault within the residence. (*Id.*, PageID.15.) Petitioner suggests that "[a]n unintentional crossing of a threshold, as seen here, cannot rise to home invasion first degree." (*Id.*, PageID.16.)

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).

The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the following standard to resolve Petitioner's sufficiency challenge:

> This Court reviews de novo a claim of insufficient evidence. *People v. Jones*, 297 Mich. App. 80, 86; 823 N.W.2d 312 (2012). "The evidence is reviewed in a light most favorable to the prosecution to determine whether a rational jury could find that each element of the crime was proved beyond a reasonable doubt." *Id.* In making the determination, this Court must "not interfere with the factfinder's role of deciding the credibility of the witnesses." *People v. Solloway*, 316 Mich. App. 174, 180; 891 N.W.2d 255 (2016). Circumstantial evidence and the reasonable inferences that arise therefrom may be properly relied upon as satisfactory proof of each element of a crime. *People v. Mikulen*, 324 Mich. App. 14, 20; 919 N.W.2d 454 (2018).

*Bell*, 2020 WL 504868, at *1. Although the court of appeals cited state authority as the source of the standard, the cases cited within *Solloway* identify *Jackson* as the source. *See People v. Wolfe*, 489 N.W.2d 748, 751 (Mich. 1992).

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

[A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the Michigan Court of Appeals applied the correct standard—here *Jackson* rather than *Strickland*—Petitioner can only overcome the deference afforded state court decisions if the court of appeals' conclusion regarding the sufficiency of the evidence is an unreasonable application of *Jackson* or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d).

The court of appeals first noted that first-degree home invasion has alternative elements, indicating that the prosecution must first prove "that the defendant's entry into a dwelling was either breaking and entering or entry without permission." *Bell*, 2020 WL 504868, at *1. The court of appeals stated further that a first-degree home invasion conviction requires proof that the

11

defendant intended to commit a felony, larceny, or assault within the dwelling or that the defendant did so commit a felony, larceny, or assault while entering, being present in, or exiting the dwelling, and that the defendant "is armed with a dangerous weapon or another person is lawfully present in the dwelling." *Id.*

The court of appeals then applied the *Jackson* standard as follows to conclude that the prosecution had introduced sufficient evidence to convict Petitioner of first-degree home invasion:

> Scott testified that Bell punched and scratched her. Viewing that evidence in the light most favorable to the jury, Bell assaulted Scott. In addition, there is no question that Bell's actions constituted both a breaking and entry into Scott's apartment and an entry without permission. He kicked the door open after being told to leave, and Scott testified he lacked permission to be in her apartment. Further, it is undisputed that Scott was lawfully in the apartment when Bell entered. Thus, the only element being challenged on appeal is whether Bell intended to or actually did assault Scott while he was in her apartment or while he was entering or exiting her apartment after his unlawful entry.
>
> Bell asserts that no assault took place the first time he entered Scott's apartment without permission. In support, he directs this Court to Scott's testimony equivocating on whether she was punched in her apartment after Bell kicked her door open. Further, Scott's testimony does allow for an inference that the only assault was on camera, i.e., that it occurred in the hallway. Yet, when reviewing a challenge to the sufficiency of the evidence, we are not tasked with determining whether a rationale [sic] view of the evidence supports the defendant's favored interpretation of the evidence. Instead, we must view the evidence in the light most favorable to the jury—the factfinder's—verdict. *Jones*, 297 Mich. App. at 86. Viewed in the proper light, Scott testified that she was attacked *inside* her apartment after Bell kicked open the door. She recounted that she was punched and she was scratched. That constitutes sufficient evidence that she was assaulted. And, even with the uncertainty introduced by Scott's answers to the cross-examination, the jury could reasonably infer that Bell broke and entered Scott's dwelling, that he committed an assault while in the dwelling, and that when he committed the assault, Scott was lawfully present in the dwelling. Accordingly, there is sufficient evidence to support Bell's conviction.

*Id.* at *1–2.

As set forth above, in his § 2254 petition, Petitioner essentially reiterates the arguments that he raised in—and that were rejected by—the court of appeals. To prevail on his sufficiency claim now, Petitioner must show that the inferences urged by the appellate court are unreasonable.

12

Notably, "[t]he facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016). Petitioner can overcome that presumption with clear and convincing evidence; he has not. He does not offer any evidence to show that the court of appeals' factual determinations are unreasonable on the record.

In *Coleman v. Johnson*, 566 U.S. 650, 655 (2012), the Supreme Court provided some guidance with respect to the distinction between a reasonable inference and mere speculation. Based on the Court's analysis, a reasonable inference is an inference that a rational factfinder could make from the facts. That is hardly an earth-shattering revelation, and it is not a particularly onerous burden. The Court went so far as to say, "the only question under *Jackson* is whether [a] finding is so insupportable as to fall below the threshold of bare rationality." *Id.* at 656.

Petitioner has offered nothing from which this Court could conclude that the court of appeals' inferences were irrational. Certainly, one could interpret the underlying events differently and reach the opposite conclusions, but that does not render the court of appeals' conclusions and inferences irrational. Petitioner, therefore, has failed to meet his burden.

Moreover, Petitioner's arguments essentially invite this Court to reweigh the witnesses' credibility—particularly Scott's credibility—and resolve all conflicts and make all inferences in his favor. Under *Jackson*, a habeas court is not required to sift through the evidence and place it on one side of the scale or the other for the purpose of assessing whether the jurors' estimation of the balance is correct. Instead, the Court is only required to look at the evidence in a light that favors the prosecution and assess whether a rational factfinder could conclude that Petitioner is guilty beyond a reasonable doubt considering that evidence. It is up to the jury to decide issues of credibility, to decide between conflicting accounts, and draw inferences—so long as the inferences

are reasonable. *See Herrera*, 506 U.S. at 401–02; *Martin*, 280 F.3d at 618. Petitioner's invitation turns the *Jackson* standard on its head.

In sum, Petitioner has failed to demonstrate that the court of appeals' determination that there was sufficient evidence to support Petitioner's first-degree home invasion conviction is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief on habeas ground I.

### B. Ground V—Confrontation Issue

As his fifth ground for relief, Petitioner contends that his rights under the Sixth Amendment's Confrontation Clause were violated when the trial court allowed Officer Garnsey's police report to be read into the record at trial. (Pet., ECF No. 1, PageID.28.) Alternatively, Petitioner contends that counsel was ineffective for failing to object. (*Id.*) The Court considers the underlying Confrontation Clause claim here and will consider Petitioner's claim of ineffective assistance *infra* in Part III.E.

The record reflects that after the prosecution rested, the parties held a conference with the trial judge outside the presence of the jury. (Trial Tr. II, ECF No. 10-8, PageID.444.) Attorney Fotieo indicated that he wanted to call Officer Garnsey as a witness, but that he had been informed that Officer Garnsey was not present. (*Id.*, PageID.445.) Attorney Fotieo indicated that he wished to question Officer Garnsey regarding the police report he prepared to impeach certain statements made by Scott, which "clearly reflect[ed] upon [her] credibility." (*Id.*)

In response, the prosecutor noted that he had "received a call last night from Officer Garnsey, who apparently has gone on his honeymoon, and I had no idea that he was on his honeymoon." (*Id.*, PageID.446.) The prosecutor stated that the only reason that attorney Fotieo wanted to introduce certain statements from the report was to impeach Scott, and that counsel had

already done so "with some of the stuff from the preliminary exam." (*Id.*) The prosecutor argued

that having Officer Garnsey testify would be "the exact same result." (*Id.*, PageID.447.)

> The trial judge then stated:

> I think Mr. Fotieo is entitled to get out the points that he is making here at this time. It's true that the witness, Ms. Scott, was impeached concerning statements in the report, but I think the importance of what Mr. Fotieo was trying to achieve now is to affirm that these statements are in fact recorded by Officer Garnsey and are in his report. Normally we would not accept a police report or any excerpts from it, but given the fact that Officer Garnsey is not here to testify and that the point is central to the defense, I think that it should be allowed.

> If it would make everyone feel better, if counsel want to mark the portions of the report that are involved, I can make the comment to the jury that the witness, Mr. Garnsey, is out of town and unavailable, but that these three statements appear in his report, and I can read them myself.

(*Id.*, PageID.448.) Both parties agreed with the court's suggestion. (*Id.*, PageID.449.) After the

jury returned, the trial judge read the following from the police report:

> "Scott added that tonight was the first time he," meaning the defendant, "had ever been inside her apartment."

> Second statement, "Scott said she told Bell she did not know where his hat was because she had not seen him wearing a hat at all tonight."

> And the third statement is, "Scott stated that before he scratched her, Bell punched her in the face with a closed fist approximately five-six times after he kicked her door in."

> So those statements are contained in the report of Officer Garnsey, and he would have indicated as much had he been here to testify.

(*Id.*, PageID.451–452.)

> Petitioner raised this claim in his Rule 6.500 motion, and the trial court rejected it, stating:

> [Petitioner] next argues that the introduction of Officer Garnsey's police report in lieu of requiring his live testimony violated his constitutional rights under the confrontation clause. A review of the record reveals that it was [Petitioner's] trial counsel who introduced the police report, and he did so to impeach the victim's testimony. "[T]he Confrontation Clause applies only to statements used as substantive evidence." *People v. Fackelman*, 489 Mich. 515; 802 N.W.2d 552, 559 (2011) (citing *Tennessee v. Street*, 471 U.S. 409, 413–14 (1985) (holding that

> evidence admitted solely for impeachment purposes did not violate the Confrontation Clause). Moreover, because it was [Petitioner's] counsel who introduced the police report, [Petitioner's] argument is waived by the doctrine of invited error. *See People v. McPherson*, 263 Mich. App. 124, 139; 687 N.W.2d 370, 379 (2004). Accordingly, [Petitioner's] argument fails and his appellate counsel was not ineffective for failing to raise this issue.

(ECF No. 10-12, PageID.600–601.)

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause, therefore, prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004).

Not every out-of-court statement admitted at trial, however, implicates the Confrontation Clause. As the Supreme Court stated in *Crawford*:

> The text of the Confrontation Clause . . . applies to "witnesses" against the accused—in other words, those who "bear testimony." 2 N. Webster, An American Dictionary of the English Language (1828). "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Ibid.* An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.

*Id.* at 51. The *Crawford* Court had no need to decide whether the Confrontation Clause applies to nontestimonial statements, though the Court suggested, in *dicta*, that the clause does not apply to such statements. Subsequently, the Supreme Court considered the question left open in *Crawford*

and explicitly decided that the Confrontation Clause applies only to testimonial hearsay. *See Davis v. Washington*, 547 U.S. 813, 823–24 (2006).

A witness's own inconsistent statements bear upon that witness's bias and credibility. *See United States v. Hale*, 422 U.S. 171, 176 (1975). The Supreme Court has held that admission of statements from police reports for impeachment purposes does not violate the Confrontation Clause because such statements are not being admitted as proof of the truth of the matter asserted. *See Tennessee v. Street*, 47 1U.S. 409, 414 (1985). In sum, use of such evidence for a non-hearsay purpose, such as impeachment, "raises no Confrontation Clause concerns." *Id.* at 413–14. As set forth *supra*, attorney Fotieo explicitly stated that he wanted to introduce the three statements from Officer Garnsey's police report solely to impeach Scott's testimony. Accordingly, the admission of these statements from Officer Garnsey's report did not implicate Petitioner's rights under the Confrontation Clause.

In light of the foregoing, Petitioner cannot show that the trial court's rejection of his Confrontation Clause claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to this portion of habeas ground V.

### C.    Ground VII—Sentencing Issue

As his seventh ground for relief, Petitioner contends that he is entitled to resentencing because "the trial court improperly departed from the sentencing guidelines by taking into account factors already include[ed] within the guidelines calculations." (Pet., ECF No. 1, PageID.45.) Specifically, Petitioner contends that because his "prior record [was] already taken into account by the sentencing guidelines, it may not be reapplied as justification for departure from the guidelines." (*Id.*, PageID.46.) Petitioner contends that, nevertheless, the trial court did so. Petitioner also asserts that the trial court varied upward "on the basis that [Petitioner] had only

been on parole for a short time prior to the commission of the present offense," but that Petitioner's "status as a parolee was expressly taken into account under the guidelines." (*Id.*, PageID.47.) Petitioner raised this claim in his Rule 6.500 motion, and the trial court denied it, stating that because Petitioner was sentenced to 156 months, he was sentenced within the guidelines range. (ECF No. 10-12, PageID.602.)

Petitioner appears to suggest that his minimum sentence is disproportionate because the factors relied upon by the trial court were already taken into consideration when the guidelines were calculated. The term disproportionate is derived from state court authority regarding sentencing. *See People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017); *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). As noted above, "a federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Thus, any claim by Petitioner that the trial court violated state sentencing guidelines or state sentencing principles regarding disproportionality is purely a state law claim that is not cognizable on habeas review.

In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9–11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s

18

proportionality analysis. *Id*. at 335–37. In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.

It is clear that *Milbourn* and, thus, *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at \*2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at \*1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus."). Because this Court has no power to intervene based on a perceived error of state law, *see Wilson*, 562 U.S. at 5, any claims raised by Petitioner based upon *Milbourn* and *Steanhouse* are not cognizable in a habeas corpus action.

To the extent Petitioner asserts his disproportionality claim as a violation of the Eighth Amendment's proscription against cruel and unusual punishment, the United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (discussing that gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (holding that principle applies only in "the rare case in which

a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980))). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.

For the foregoing reasons, Petitioner is not entitled to relief with respect to habeas ground VII.

### D.    Grounds VIII and X—Prosecutorial Misconduct and Trial Court Error

Petitioner raises two claims of prosecutorial misconduct in his § 2254 petition. In habeas ground VIII, Petitioner asserts that the prosecutor violated Petitioner's due process rights by amending the charge to first-degree home invasion after Petitioner refused to plead guilty and refused to waive his preliminary examination. (Pet., ECF No. 1, PageID.49.) Petitioner also faults counsel for not objecting to the prosecutor's action. (*Id.*) In habeas ground X, Petitioner faults the prosecutor for failing to exercise due diligence to "produce a crucial, endorsed witness." (*Id.*, PageID.56.) He also suggests that the trial court erred by not holding a due diligence hearing, and that counsel was ineffective for failing to request such a hearing and failing to object to omission of the missing witness instruction. (*Id.*) The Court considers Petitioner's claims of prosecutorial misconduct and trial court error below, and will consider Petitioner's related claims of ineffective assistance of counsel *infra* in Part III.E.

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. 637, 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (internal quotation marks omitted).

### 1.    Amendment of Charge

In habeas ground VIII, Petitioner asserts that the prosecutor violated Petitioner's due process rights by amending the charge to first-degree home invasion after Petitioner refused to plead guilty and refused to waive his preliminary examination. (Pet., ECF No. 1, PageID.49.) Petitioner contends that the prosecutor's decision to do so amounts to vindictive prosecution because Petitioner wanted to exercise his Sixth Amendment right to a jury trial. (*Id.*, PageID.49, 52.) Petitioner raised this claim in his Rule 6.500 motion, and the trial court rejected it, stating that the prosecutor's decision to file a greater charge did not demonstrate "actual vindictiveness." (ECF No. 10-12, PageID.602.)

The United States Court of Appeals for the Sixth Circuit recently discussed what is necessary for a habeas petition to establish vindictive prosecution:

> A defendant may establish vindictive prosecution two ways. He can demonstrate "actual vindictiveness" by establishing through objective evidence that the prosecutor's actions were to punish the defendant for standing on his legal rights. *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001). Alternatively, the defendant may show that, in his particular situation, a "realistic likelihood of vindictiveness" existed for the prosecutor's action. *Id.* The court presumes an improper vindictive motive only when this reasonable likelihood of vindictiveness exists. *Id.* at 481–82. The defendant must establish that: (1) the prosecutor had "some stake" in deterring the exercise of his rights; and (2) the prosecutor's conduct was somehow unreasonable. *Id.* at 482.

*Haight v. Jordan*, 59 F.4th 817, 857 (6th Cir. 2023).

Petitioner has not—and cannot—demonstrate that the trial court's rejection of his assertion of vindictive prosecution is contrary to, or an unreasonable determination of, clearly established federal law. Petitioner first argues that the prosecutor vindictively amended the charge to first-degree home invasion because Petitioner refused to accept the plea offer. However, the Supreme Court has stated: "[I]n the 'give-and-take' of plea bargaining, there is no . . . element of punishment or retaliation" if the government threatens additional charges if plea bargaining fails, "so long as

the accused is free to accept or reject the prosecution's offer." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978); *see also United States v. Walls*, 293 F.3d 959, 970 (6th Cir. 2002) (stating that "[w]hen the pretrial addition of more serious charges results merely from the failure of the plea bargaining process, it is not vindictive prosecution"). Here, Petitioner simply cannot maintain a vindictive prosecution claim on the basis that the charge was amended after Petitioner rejected the plea offer.

Petitioner also suggests that the prosecutor amended the charge because Petitioner refused to waive his preliminary examination. This argument, however, is solely based upon Petitioner's speculative belief. Petitioner offers no objective evidence that the prosecutor amended the charge to punish Petitioner for exercising his right to a preliminary examination. Moreover, Petitioner does not demonstrate a realistic likelihood of vindictiveness, as the record is devoid of evidence suggesting that the prosecutor had a stake in deterring Petitioner's exercise of his right to a preliminary examination and that the prosecutor's conduct was unreasonable. Indeed, as set forth above, at the outset of the preliminary hearing, before any testimony was taken, the prosecutor explicitly stated that if Petitioner proceeded with the preliminary examination, "the facts may be elicited that support a charge of home invasion first degree, which would be an even greater penalty." (ECF No. 10-2, PageID.271.) Petitioner, therefore, was on notice that the evidence elicited during the preliminary exam might support a greater charge.

In sum, Petitioner has not demonstrated that the trial court's rejection of his vindictive prosecution claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to relief with respect to this portion of habeas ground VIII.

### 2.    Failure to Produce Witnesses and Lack of Due Diligence Hearing

In his tenth and final ground for relief, Petitioner contends that the prosecutor denied him a fair trial by "failing to exercise due diligence to produce a crucial, endorsed witness." (Pet., ECF

No. 1, PageID.56.) Petitioner also faults the trial court for not conducting a due diligence hearing. (*Id.*) Specifically, Petitioner faults the prosecutor for not producing Officer Garnsey and Cherries Stubbs, "who [were] both [a] known endorsed witness and [a] res gestae witness." (*Id.*, PageID.59.) Petitioner contends that because these two individuals were included on the prosecution's witness list, the prosecution was required to produce them absent good cause. (*Id.*, PageID.60.) Petitioner raised this ground in his Rule 6.500 motion, and while the trial court did not address it directly, the trial court did note that the prosecution did not call Stubbs and Garnsey as witnesses, thereby not relying upon them in its case-in-chief against Petitioner. (ECF No. 10-12, PageID.601–602.)

The premise of Petitioner's argument is that the prosecutor had a duty to present all witnesses, including all *res gestae* witnesses, that he identified as witnesses before trial. The idea that the prosecutor must produce all witnesses is a product of the English courts:

> The prosecutor in a criminal case, is not at liberty, like a plaintiff in a civil case, to select out a part of an entire transaction which makes against the defendant, and then, to put the defendant to the proof of the other part, so long as it appears at all probable from the evidence, that there may be any other part of the transaction undisclosed; especially, if it appears to the court that the evidence of the other portion is attainable. The only legitimate object of the prosecution is, "to show the whole transaction, as it was, whether its tendency be to establish guilt or innocence." The prosecuting officer represents the public interest, which can never be promoted by the conviction of the innocent. His object like that of the court, should be simply justice; and he has no right to sacrifice this to any pride of professional success. And however strong may be his belief of the prisoner's guilt, he must remember that, though unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained, is unjust and dangerous to the whole community. And, according to the well-established rules of the English courts, all the witnesses present at the transaction, should be called by the prosecution, before the prisoner is put to his defense, if such witnesses be present, or clearly attainable. See *Maher v. The People*, 10 Mich., 225, 226. The English rule goes so far as to require the prosecutor to produce all present at the transaction, though they may be the near relatives of the prisoner. See *Chapman's case*, 8 C. & P., 559; *Orchard's case*, *Id*., note *Roscoe's Cr. Ev*., 164.

*Hurd v. People*, 25 Mich. 405, 416, 1872 WL 3237 (Mich. Oct. 8, 1872). The principle made its way into Michigan statutes by way of a requirement that the indictment—and eventually the information—include a list of witnesses endorsed by the prosecutor. *See People v. Pearson*, 273 N.W.2d 856, 866 (Mich. 1979) ("The rule took legislative form in 1859; the statute now provides: [statutory language omitted]. The relevant language has remained unchanged since first enacted." (footnotes omitted)). It is not so much the statutory language, however, that matters here. Instead, it is the Michigan courts' construction of that language "to require the prosecutor to indorse on the information**, produce in court, and call all known res gestae witnesses**." *Id.* (footnote omitted, emphasis added).

Thus, state law, not the federal Constitution and federal law, is the source of Petitioner's claim that the prosecutor must produce all *res gestae* witnesses. Moreover, in 1986, the Michigan Legislature eliminated the requirement that the prosecutor endorse all *res gestae* witnesses and the requirement that the prosecutor produce all endorsed witnesses. *People v. Koonce*, 648 N.W.2d 153, 156 (Mich. 2002); *People v. Perez*, 670 N.W.2d 655, 657–58 (Mich. 2003). The statutory amendment "replaced the prosecutor's duty to produce *res gestae* witnesses with 'an obligation to provide notice of known witnesses and reasonable assistance to locate witnesses on defendant's request.'" *Perez*, at 657–658.

The *res gestae* witness rule is, or more accurately was, purely a matter of state law. The United States Court of Appeals for the Sixth Circuit has repeatedly held that the failure of a Michigan prosecutor to produce *res gestae* witnesses implicates no federal right. *See Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. 2011) ("Michigan's requirement that prosecutors produce *res gestae* witnesses is a matter of state law, and its enforcement is outside the scope of our review. We have rejected on that basis claims raised under this very state requirement."); *Brown v. Burton*,

No. 18-2145, 2019 WL 4865932, at *2 (6th Cir. Apr. 9, 2019) ("Brown[] claim[ed] that his Sixth and Fourteenth Amendment rights were violated when the prosecutor failed to produce two witnesses and failed to assist him in locating such witnesses. . . . The district court concluded that Brown's claim alleged a state-law violation, which is not a basis for federal habeas relief. . . . Reasonable jurists would not debate that conclusion."); *Hatten v. Rivard*, No. 17-2520, 2018 WL 3089204, at *3 (6th Cir. May 9, 2018) ("This court has explained, however, that 'Michigan's requirement that prosecutors produce *res gestae* witnesses is a matter of state law, and its enforcement is outside the scope of our review.'" (quoting *Collier*, 419 F. App'x at 559)); *Moreno v. Withrow*, No. 94-1466, 1995 WL 428407, at *1 (6th Cir. Jul. 19, 1995) ("Moreno's claim the prosecutor failed to call a *res gestae* witness, Bennett's sister, concerned a perceived error of state law which rarely serves as a basis for habeas corpus relief and does so only when, under federal constitutional law, the petitioner is denied fundamental fairness in the trial process."); *Smith v. Elo*, No. 98-1977, 1999 WL 1045877, at * 2 (6th Cir. Nov. 8, 1999) ("Smith is not entitled to relief on his claim that the prosecutor failed to call *res gestae* witnesses because issues of state law are not cognizable on federal habeas review . . . ."); *Lewis v. Jabe*, No. 88-1522, 1989 WL 145895, at *3 (6th Cir. Dec. 4, 1989) ("[T]he *res gestae* requirement is a state law question. Claims based on violations of state law are for the state courts to decide."); *Atkins v. Foltz*, No. 87-1341, 1988 WL 87710 (6th Cir. Aug. 24, 1988) ("[F]ederal law does not require production of all *res gestae* witnesses. . . . [A]lthough Michigan law requires the production of all *res gestae* witnesses . . . this court cannot hear state claims on petition for writ of habeas corpus . . . ."); *see also Grays v. Lafler*, 618 F. Supp. 2d 736, 745 (W.D. Mich. 2008) ("There is no clearly established Supreme Court law recognizing a constitutional right to a *res gestae* witness.").

Habeas petitioners have attempted to "federalize" the claim that the prosecutor failed to produce a witness by contending that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), interfered with the right to compulsory process, interfered with the right to present a defense, or interfered with the right to confrontation. In his § 2254 petition, Petitioner cites to *Brady*. (Pet., ECF No. 1, PageID.59.) Moreover, as discussed *supra*, Petitioner asserts a Confrontation Clause claim premised upon the admission of three statements from Officer Garnsey's police report. None of those rights, however, are at issue here, as discussed below.

Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280 (quoting *Bagley*, 473 U.S. at 682); *see also Cone v. Bell*, 556 U.S. 449, 469–70 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

However, the *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006). The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another

27

source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)). "[W]here the alleged *Brady* evidence is available to the defense, 'there is really nothing for the government to disclose.'" *Abdur'Rahman v. Colson*, 649 F.3d 468, 474 (6th Cir. 2011) (quoting *Bell v. Bell*, 512 F.3d 223, 235 (6th Cir. 2008)).

The *Brady* evidence withheld here, according to Petitioner, consists of potential testimony from Officer Garnsey and Stubbs. However, Petitioner does not contest that defense counsel was aware of these existence of these witnesses before trial. Petitioner's knowledge of the identities of Officer Garnsey and Stubbs before trial forecloses any *Brady* claim that the prosecutor withheld these witnesses. Moreover, there is no suggestion in the record that Officer Garnsey and Stubbs would have provided testimony that was beneficial to Petitioner's defense. Instead, Petitioner suggests only that they would have served as impeachment witnesses.

Furthermore, the trial court did not bar Petitioner from calling Officer Garnsey and Stubbs if he so chose, so his rights to compulsory process or to present a defense were not hampered. Moreover, Petitioner's confrontation rights were not implicated. Stubbs did not testify at trial, and while Officer Garnsey was scheduled to testify and did not due to the fact that he had unexpectedly left for his honeymoon, as thoroughly discussed *supra* in Part III.B, the three statements from his police report were admitted for impeachment purposes only and so did not implicate the Confrontation Clause. Finally, any suggestions by Petitioner that the prosecutor did not exercise due diligence in locating these witnesses is clearly belied by the record, and so there was no basis for the trial court to hold a due diligence hearing.

In short, Petitioner raises only a state law claim that is not cognizable on habeas review. His attempts to "federalize" this claim by citing *Brady* and arguing a Confrontation Clause violation fall short. Petitioner, therefore, is not entitled to relief with respect to this portion of

habeas ground X, as he has not demonstrated that the trial court's rejection of this ground is contrary to, or an unreasonable application of, clearly established federal law.

### E.    Ineffective Assistance of Counsel Grounds

Petitioner raises several assertions of ineffective assistance of trial and appellate counsel in habeas grounds II, III, IV, V, VI, VIII, IX, and X.

### 1.    Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more

likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner raised some of his ineffective assistance claims on direct appeal and raised the remainder in his Rule 6.500 motion. On direct appeal, the court of appeals analyzed Petitioner's claims under the following standard:

> In order to establish that his lawyer provided ineffective assistance, Bell must establish (1) that his lawyer provided deficient assistance, i.e., that his performance "fell below an objective standard of reasonableness," and (2) that he was prejudiced by his lawyer's deficient performance, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *People v. Gioglio (On Remand)*, 296 Mich. App. 12, 22; 815 N.W.2d 589 (2012), remanded for resentencing 493 Mich. 864 (quotation marks and citation omitted). "Because there are countless ways to provide effective assistance in any given case, in reviewing a claim that counsel was ineffective courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (quotation marks and citation omitted).

*Bell*, 2020 WL 504868, at *2. Although the court of appeals cited state authority, the standard is identical to that set forth in *Strickland*. Moreover, *Gioglio* identifies *Strickland* as the source of the standard. *Gioglio*, 815 N.W.2d at 597.

In its opinion denying Petitioner's Rule 6.500 motion, the trial court set forth a lengthy standard for evaluating Petitioner's claims of ineffective assistance. (ECF No. 10-12, PageID.597–598.) The trial court, however, specifically cited *Strickland* within its recitation of the standard. (*Id.*, PageID.598.) The standards as set forth by the state courts leave no question that the state courts applied the correct standard. Petitioner, therefore, can only overcome the deference afforded to state court decisions if the state courts' determinations were based on an unreasonable application of *Strickland* or if the state courts' resolutions were based on unreasonable determinations of the facts. 28 U.S.C. 2254(d).

## 2. Failing to Request Lesser-Included Instruction

As his second ground for relief, Petitioner contends that counsel was ineffective for failing to request a lesser-included offense instruction. (Pet., ECF No. 1, PageID.17.) Petitioner suggests

that a "rational view of the evidence would have supported an instruction on breaking and entering and/or assault." (*Id.*, PageID.18.) He avers that he "admit[ted] to both an assault and a breaking" in his presentence investigation report, and that he "was clearly interested in taking accountability for his actions if presented with charges that fit his actions." (*Id.*, PageID.19.)

> Petitioner raised this claim on direct appeal, and the court of appeals rejected it, stating:
>
> Bell contends that his lawyer should have requested the jury be instructed on breaking and entering without permission, which is a lesser-included offense of first-degree home invasion. *See People v. Silver*, 466 Mich. 386, 392; 646 N.W.2d 150 (2002) (opinion by Taylor, J). However, the decision to not request the trial court to instruct the jury on a lesser-included offense can constitute sound trial strategy, *People v. Sardy*, 216 Mich. App. 111, 116; 549 N.W.2d 23 (1996). "We will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *People v. Unger*, 278 Mich. App. 210, 242–243; 749 N.W.2d 272 (2008). "The decision to proceed with an all or nothing defense is a legitimate trial strategy." *People v. Nickson*, 120 Mich. App. 681, 687; 327 N.W.2d 333 (1982). Further, "many calculated risks may be necessary in order to win difficult cases." *Unger*, 278 Mich. App. at 242.
>
> The relevant elements of breaking and entering without permission are that (1) the defendant broke and entered a building, (2) without permission from the owner. *People v. Cornell*, 466 Mich. 335, 361; 646 N.W.2d 127 (2002). The surveillance video clearly depicted Bell breaking into Scott's apartment by repeatedly kicking her door until the lock broke and the door opened. Bell then entered the apartment. Scott testified that he did not have permission to enter; however, even in the absence of her testimony, the jury could have reasonably inferred that someone who repeatedly kicks a door to open it does not have permission to enter. Therefore, as a practical matter, Bell had no viable defense to breaking and entering and, if it had been presented to the jury, there is a substantial and reasonable probability that he would have been convicted. Because Bell is a fourth-offense habitual offender, his sentence for breaking and entering would have been enhanced. *See* MCL 769.12. Rather than proceed with a defense strategy that would in all likelihood result in a conviction, Bell's lawyer pursued a defense that had the potential to result in Bell being acquitted. In furtherance of that strategy, Bell's lawyer impeached Scott's testimony that she was assaulted in her apartment after Bell kicked open the door and argued that a necessary element of the offense was missing. The fact that the strategy was not successful does not mean Bell's lawyer was ineffective for using it. *See People v. Petri*, 279 Mich. App. 407, 412; 760 N.W.2d 882 (2008). This claim of ineffective assistance is, therefore, without merit.

*Bell*, 2020 WL 504868, at *3.

head

Given the double deference owed to the court of appeals' conclusion, it is not for this Court to decide whether counsel's strategy was reasonable. Rather, this Court must determine "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. The Court, therefore, must consider the court of appeals' assessment of trial counsel's action, not counsel's action itself.[2]

In *Keeble v. United States*, 412 U.S. 205 (1973), the Supreme Court explored the possible outcomes that might follow from giving—or failing to give—a lesser-included offense instruction. The *Keeble* Court acknowledged the potential benefit that Petitioner claims was denied to him at trial:

> [I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction. In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright. We cannot say that the availability of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict.

---

[2] Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy and, therefore, can only prevail if he shows that the challenged action **cannot** be considered sound trial strategy. Thus, as the *Harrington* Court noted, "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington*, 562 U.S. at 110. If the Michigan Court of Appeals conceived of a sound strategy that includes the challenged action, the matter is resolved.

*Keeble*, 412 U.S. at 212–13; *see also Beck v. Alabama*, 447 U.S. 625, 634 (1980) (noting that "providing the jury with the 'third option' of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard").

The Sixth Circuit has considered similar claims from habeas petitioners in numerous opinions. For example, the Sixth Circuit has held that counsel was not ineffective for failing to request a lesser-included manslaughter instruction in a situation where the petitioner and defense counsel's primary defense theory was that the petitioner was not the one who shot the victim. *See Tinsley v. Million*, 399 F.3d 796, 808 (6th Cir. 2005). The Sixth Circuit has also declined to find ineffective assistance of counsel where counsel's failure to request a lesser-included voluntary manslaughter instruction was consistent with the defendant's effort to seek a full acquittal on the basis of self-defense. *See Lewis v. Russell*, 42 F. App'x 809, 810–11 (6th Cir. 2002). Similarly, in *Edwards v. Mack*, the Sixth Circuit concluded that counsel was not ineffective for waiving jury instructions for lesser-included offenses where counsel and the defendant hoped to obtain an acquittal on the murder charge. *See Edwards v. Mack*, 4 F. App'x 215, 217–18 (6th Cir. 2001). Overall, the Sixth Circuit has concluded that such a "high risk, high reward" strategy is reasonable when there is sufficient evidence in the record to support a chance of acquittal. *See Kelly v. Lazaroff*, 846 F.3d 819, 830 (6th Cir. 2017); *see also Harrop v. Sheets*, 430 F. App'x 500, 507 (6th Cir. 2011) (discussing that counsel could have reasonably decided not to request a lesser offense instruction because such an instruction "would have diluted the other arguments [counsel] was advancing to the jury").

As the court of appeals correctly noted, on cross-examination, defense counsel impeached Scott's testimony on direct that Petitioner had assaulted her while in the apartment. Specifically, counsel asked: "All right, so you didn't get punched earlier when he was in the apartment, correct?"

(Trial Tr. II, ECF No. 10-8, PageID.421.) Scott replied, "No." (*Id.*) Counsel's strategy was to demonstrate that although Petitioner did assault Scott and kicked her door down, the assault did not occur in the residence, thereby negating one of the elements required for a conviction for first-degree home invasion.

In sum, Petitioner's situation is quite similar to those presented in *Edwards*, *Kelly*, and *Harrop*, where the Sixth Circuit conclude that counsel was not ineffective for requesting lesser-included instructions because the defendant hoped to obtain a complete acquittal. Petitioner has failed to show that the court of appeals' rejection of this claim of ineffective assistance was contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled to relief with respect to habeas ground II.

### 3.    Counsel's Admission of Petitioner's Guilt

In habeas ground III, Petitioner faults counsel for admitting to Petitioner's guilt on the charged offenses. (Pet., ECF No. 1, PageID.20.) Specifically, Petitioner contends that counsel admitted Petitioner's guilt through the following defense—"[P]etitioner assaulted Ms. Scott, he broke Ms. Scott['s] door, but he left for good before coming back down the hall and committing the assault." (*Id.*) Petitioner avers that counsel "essentially admitted [Petitioner] assaulted Ms. Scott by conceding guilt during opening statements." (*Id.*, PageID.21.)

Petitioner raised this claim on direct appeal, and the court of appeals summarily rejected it, stating:

> Bell also argues that his trial lawyer was ineffective because he conceded that Bell was guilty of breaking and entering and of assault. However, Bell was not charged with either of those offenses. Instead, he was charged with first-degree home invasion. Bell's lawyer did not concede that Bell was guilty of the charge presented to the jury. His decision to admit some wrongdoing on Bell's part—especially when faced with the objective evidence in the surveillance video—was a matter of trial strategy and does not amount to ineffective assistance. *See Petri*, 279 Mich. App. at 412.

*Bell*, 2020 WL 504868, at *4.

> During opening statements, counsel stated the following:
>
> Then, the final time when you see Mr. Bell leave, you'll see he's leaving, and then Ms. Scott comes out and says something to Mr. Bell, and Mr. Bell does assault her. But I want you to entertain the thought that any—any entering or exiting of her apartment had long since finished when this assault occurred. She came out, I'm not sure what she said. Hopefully we hear what she said, and it was something to rile Mr. Bell up, and he did assault her, so that did occur.
>
> I'm going to ask you to entertain the thought that that is not part of Mr. Bell coming and going into the apartment, that Mr. Bell's on his way. He's on his way when she comes out to do that, so that's what you're going to see and here.

(Trial Tr. I, ECF No. 10-7, PageID.386–387.) Defense counsel also acknowledged that the jury would see the video footage in question. (*Id.*, PageID.397.)

The Court's review of the record cannot lead to a conclusion that the court of appeals' rejection of this assertion of ineffective assistance was contrary to, or an unreasonable application of, clearly established federal law. As an initial matter, the court of appeals correctly noted that Petitioner was not charged with assault and breaking and entering. Accordingly, counsel never admitted to Petitioner's guilt on any charged offense. Moreover, while counsel did admit that Petitioner assaulted Scott, counsel's strategy was to argue to the jury that the assault did not occur in the residence, as required to sustain a conviction for first-degree home invasion. In light of the evidence against Petitioner, the Court cannot conclude that Petitioner was prejudiced by counsel's strategy in admitting that Petitioner assaulted Scott, particularly in light of the video footage from the hallway outside Scott's apartment. Petitioner, therefore, is not entitled to relief with respect to habeas ground III.

### 4.  Performance Regarding Plea Offer

In habeas ground IV, Petitioner contends that "due process requires reinstating a favorable plea offer with a 36 month to 106 months sentencing agreement where trial counsel failed to advise

her successor that Petitioner wrote her a letter informing her he wanted to accept the plea offer."

(Pet., ECF No. 1, PageID.23.) Essentially, Petitioner asserts an ineffective assistance of counsel

claim regarding plea negotiations.

A criminal defendant is entitled to effective assistance of counsel during plea negotiations.

*See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The same two-part *Strickland* inquiry applies to

ineffective assistance of counsel claims regarding the plea negotiation process. *See id.* Often,

habeas petitioners challenge the assistance of counsel for advising acceptance of a plea offer. Then,

"in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted

on going to trial." *Id.* at 59. In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court described

the appropriate prejudice analysis where counsel advises rejection of a plea offer:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164. Moreover, "defendants must demonstrate a reasonable probability they would have

accepted the earlier plea offer had they been afforded effective assistance of counsel." *See Missouri*

*v. Frye*, 566 U.S. 134, 147–49 (2012).

Petitioner raised this claim in his Rule 6.500 motion, and the trial court rejected it, stating:

> The Court of Appeals has already addressed [Petitioner's] decision to reject the plea offer, holding that [Petitioner] was present at the status conference when, acting on his behalf, his lawyer rejected the offer made by the prosecution. Although it was a stand-in lawyer, the Court noted that the lawyer had consulted with [Petitioner's] counsel, spoken with [Petitioner], and determined that [Petitioner] did not want to accept the plea offer. The record does not suggest that [Petitioner] indicated to the contrary. Moreover, if [Petitioner] thereafter wanted to accept the plea offer, he has not established that the prosecutor had not withdrawn at that time. *See Walker*, 498 Mich. at 895. Finally, there is no reason why [Petitioner] himself could not have

attempted to inform successor counsel that he wished to accept the plea offer. Therefore, the Court finds that [Petitioner's] trial counsel was not ineffective for this reason and his appellate counsel not ineffective for failing to raise this issue.

[Petitioner] next claims that his trial counsel was ineffective because he failed to provide [Petitioner] with thorough and accurate explanations about the potential risks of rejecting the plea offer[,] and because he alleges his trial counsel told him he "would beat the first degree home invasion" charge. [Petitioner] supports this claim in an affidavit attached to the current motion. Curiously, this is the first time [Petitioner] makes these claims. And [Petitioner] has not provided any evidence establishing that he informed his appellate counsel that his trial counsel gave him this advice during the plea process. [Petitioner] wrote to his appellate counsel requesting she make certain arguments; this was not one of them. Accordingly, the Court finds [Petitioner] has failed to establish that his appellate counsel was ineffective for failing to raise this issue on appeal.[3]

_____

[3] Moreover, trial counsel is not ineffective for incorrectly advising a defendant that he or she can "beat" the charge if [Petitioner] maintains his innocence. *See People v. Neeley*, unpublished opinion of the Court of Appeals, issued October 23, 2014 (Docket No. 316270), 2014 WL 5408969, at *2 ("Assuming that defendant's decision to reject the plea offer was based on his counsel's belief that defendant could "beat" the charge, defendant cannot demonstrate that this advice was objectively deficient. The record reveals that if defense counsel did in fact advise defendant to reject the plea, it was because defendant maintained his innocence.").

(ECF No. 1-12, PageID.600.)

In his § 2254 petition, Petitioner reiterates the arguments that he raised—and that were rejected—in the state courts. He argues that counsel told him "that the prosecution would not be able to convict him on second degree home invasion, let alone first degree home invasion." (Pet., ECF No. 1, PageID.25.) Petitioner avers further that he signed an affidavit stating:

I appeared with my attorney Deno Fotieo at trial on June 4, 2018 before Judge Donald A. Johnston. At the trial, the prosecutor offered an agreement for me to plead guilty to one count of first-degree home invasion, third degree habitual offender in exchange for sentence of 9-20 years in prison. I rejected the offer because my attorney told me I would beat the first degree home invasion in front of Judge Donald A. Johnston, the assigned trial judge. (See Appendix B, Affidavit of Damion Bell).

(*Id.*) A copy of the affidavit to which Petitioner refers is part of the record from Petitioner's appeal of the denial of his Rule 6.500 motion. (ECF No. 10-14, PageID.920.) In that affidavit, Petitioner sets forth the claim he makes regarding attorney Fotieo above, as well as a claim that on March 18, 2018, he wrote a letter to attorney Joyce informing her that he wanted to accept the plea offer. (*Id.*) Although Petitioner states that he was "duly sworn" when he prepared the affidavit, it is not signed and notarized by a notary public, and nowhere does Petitioner indicate that he prepared the affidavit under the penalty of perjury. This affidavit, therefore, does not rise to the level of clear and convincing evidence needed to overcome the presumption that the state courts' factual determinations are correct.

In any event, the record does not contain a record of any hearing that occurred on June 4, 2018, and the register of actions indicates that while trial was initially scheduled for June 4, 2018, it was adjourned because the prosecutor intended to file a motion to amend the charge. (ECF No. 10-1, PageID.266.) To the extent that Petitioner is referring to the June 22, 2018, hearing regarding the motion to amend and the motion to quash, the Court's review of that transcript reveals that at no time during that hearing did the prosecutor make any plea offer to Petitioner. Moreover, on three separate occasions (the preliminary examination and status conferences), counsel for Petitioner explicitly represented that Petitioner did not want to accept the various plea offers set forth by the prosecution. (ECF Nos. 10-2, PageID.272; ECF No. 10-3, PageID.290; ECF No. 10-4, PageID.298.) At no time during those hearings did Petitioner speak up and refute counsel's statements. Moreover, there is no evidence before the Court that Petitioner ever expressed his desire to accept a plea offer after attorney Joyce withdrew and attorney Fotieo appeared to represent him.

In light of the foregoing, Petitioner has not demonstrated that the trial court's rejection of this claim of ineffective assistance of counsel is contrary to, or an unreasonable application of, *Strickland*, *Lafler*, and *Frye*. Petitioner, therefore, is not entitled to relief with respect to habeas ground IV.

### 5.      Failure to Seek Adjournment and Object to Police Report

As part of habeas ground V, Petitioner faults counsel for not asking for an adjournment so that Officer Garnsey could be present to impeach Scott's testimony. (Pet., ECF No. 1, PageID.32.) He also suggests that counsel should have objected to Officer Garnsey's absence instead of requesting that portions of the police report be read to the jury. (*Id.*, PageID.35.) Petitioner asserts further that counsel should have objected to admission of the police report. (*Id.*)

As an initial matter, Petitioner's contention that counsel should have objected to the admission of the statements in the report is wholly without merit. Given that defense counsel is the one who requested that they be admitted, it would make no sense for counsel to then turn around and object to the trial court's determination that the statements could be read to the jury. Moreover, Petitioner has not demonstrated any prejudice from counsel's failure to request an adjournment so that Officer Garnsey could testify in person. As discussed *supra*, attorney Fotieo indicated that he wanted to question Officer Garnsey regarding the police report to impeach certain statements made by Scott during her testimony. (Trial Tr. II, ECF No. 10-8, PageID.445.) Even if Officer Garnsey had been present to testify, the information from the statements in question would have been admitted in a substantially identical manner to how they were when the trial judge read the statements to the jury. Petitioner has not demonstrated, and the Court does not discern, how the outcome of Petitioner's trial would have differed had counsel been able to present impeachment testimony from Officer Garnsey himself. Petitioner, therefore, is not entitled to relief with respect to this portion of habeas ground V.

### 6.     Counsel's Performance Regarding Missing Witnesses

In two of his grounds for relief, Petitioner takes issue with counsel's performance regarding missing witnesses. First, in habeas ground VI, Petitioner faults counsel for failing to "secure the presence of Cherries Stubbs[,] a critical prosecution eyewitness." (Pet., ECF No. 1, PageID.40.) Petitioner also contends that counsel should have requested a continuance to "locate and produce Ms. Stubbs." (*Id.*) In habeas ground X, Petitioner suggests that counsel was ineffective for failing to request a hearing or dismissal of the case premised upon the absence of Stubbs and Officer Garnsey, and for failing to object to "the omission of the missing witness instruction." (*Id.*, PageID.56.)

### a.     Ground VI—Failure to Call Cherries Stubbs

The appellate record from Petitioner's appeal of the denial of his Rule 6.500 motion contains a copy of the police report memorializing Stubbs' statement to officers. (ECF No. 10-14, PageID.927.) Officer Garnsey's report states in pertinent part:

> I walked back into the Weston Apartments and located the female that had previously pointed out the suspect. I identified her as Cherries Stubbs and she told me she lived in apartment 203, which is next door in the same hallway to where tonight's incident happened. Cherries said she was in her living room watching TV when she could hear arguing going on next door. Cherries stated she heard a male yell, "I'm gonna beat your ass! I'll be back tomorrow!" Cherries said the male was also yelling about getting his hat back or something along those words. Cherries said she then heard 5-6 very loud bangs as if someone was kicking or running into a door. Cherries said she peeked out of her door shortly after these bangs to see what was going on. When she looked out she saw a male and female fighting in the hallway. Cherries said she could only see the two pushing or wrestling with each other during the time she peeked outside. After the fighting stopped the male walked past her apartment to leave the floor and building. Cherries said she followed the man down so she could point him out to security but ended up running into us first and pointed him out to us. I asked Cherries if she heard or saw anything else tonight and she stated she did not and only knew the male that walked out past us was the male that was causing issues tonight.

(*Id.*)

Petitioner raised counsel's failure to locate and secure Stubbs' presence as a witness in his

Rule 6.500 motion, and the trial court rejected it, stating:

> [Petitioner] next argues that he was denied his right to effective counsel when his
> trial counsel failed to secure the presence of Cherries Stubbs, who he refers to as a
> "critical witness." Cherries Stubbs was a next door neighbor of the victim who
> claimed to have witnessed a portion of the altercation between [Petitioner] and the
> victim. Officer Garnsey's police report included statements made by Stubbs. These
> statements reveal that Stubbs would likely not have testified in a manner favorable
> to [Petitioner]. Rather, Stubbs' statements in the police report tend to incriminate
> [Petitioner]. And because the People did not rely on Stubbs' testimony or the police
> report in their case-in-chief, there was no reason for [Petitioner'] trial counsel to
> call Stubbs to the stand in order to attempt to establish that she was lying.
> Accordingly, the Court finds that [Petitioner's] trial counsel was not ineffective for
> failing to secure this witness'[s] presence and his appellate counsel not ineffective
> for failing to raise this issue on appeal.

(ECF No. 10-12, PageID.601–602.)

In his § 2254 petition, Petitioner reiterates that it was necessary to have Stubbs "on the

stand to impeach her statement." (Pet., ECF No. 1, PageID.42.) He contends that the surveillance

camera footage "fail[ed] to see Ms. Stubbs' head peek out of her apartment as she told the police."

(*Id.*) Petitioner avers that the "prosecutor relied on her statement to argue that Ms. Stubbs is the

one who pointed [Petitioner] out to the police." (*Id.*) Overall, Petitioner contends that Stubbs was

"critically important to [Petitioner's] defense." (*Id.*)

Petitioner's assertion that Stubbs' testimony was critically important to his defense is

speculative and not founded upon the record. Given the substance of Stubbs' statement to the

police, Petitioner has not demonstrated how her testimony would have been favorable to his

defense in any way. "A defendant cannot simply state that the testimony would have been

favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States

v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted); *see also Clark v. Waller*, 490 F.3d

551, 558 (6th Cir. 2007) (rejecting an ineffective assistance claim for the petitioner's failure to

provide a "basis on which to conclude that failure to call a possibly favorable witness amounts to constitutionally deficient performance").

Moreover, at no time did the prosecution rely upon Stubbs or her statement in its case-in-chief. The only possible reference to Stubbs occurred when Officer Reinick testified that Petitioner had walked past officers when they arrived on scene. (Trial Tr. II, ECF No. 10-8, PageID.441.) Officer Reinick testified that someone in the lobby "indicated . . . that the suspect was the one that just walked past [his] location." (*Id.*, PageID.442.) The trial court cautioned the jury that the statement was not offered as evidence of the truth of the matter asserted, but rather to explain what Officer Reinick did after hearing the statement. (*Id.*) Given the prosecution's lack of reliance on Stubbs and her statement, there was no basis for counsel to call her as a witness solely for impeachment purposes.

In any event, even if the camera had not captured Stubbs' head peeking out from her apartment, that does not automatically lead to a conclusion that Stubbs lied to police. Petitioner provides no evidence regarding the angle of the camera, nor is there any evidence regarding how far Stubbs opened her door to see out into the hallway. Overall, Petitioner simply offers nothing from which this Court could conclude that Stubbs' testimony would have been helpful at all, much less that it would have led to his acquittal. Thus, there is no basis to conclude that counsel was ineffective for failing to secure Stubbs' presence and for failing to request a continuance to ensure her presence.

In sum, Petitioner has not demonstrated that the trial court's rejection of this assertion of ineffective assistance of counsel is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground VI.

### b.     Failure to Request Hearing or Dismissal and Missing Witness Instruction

As part of habeas ground X, Petitioner faults counsel for not requesting that the trial court hold a hearing or dismiss the case based upon the prosecution's failure to produce Officer Garnsey and Stubbs as witnesses. (Pet., ECF No. 1, PageID.56.) Petitioner believes that he was entitled to "an adverse inference instruction informing the jury of its entitlement to infer that the missing witnesses' testimony would have been unfavorable to the prosecution." (*Id.*, PageID.69.) Petitioner contends that he was prejudiced by counsel's failure because "[i]t is very likely that the missing witness's testimony would have tipped the scales in [P]etitioner's favor." (*Id.*, PageID.70.)

Again, Petitioner's assertion is simply based upon self-serving speculation. As thoroughly discussed *supra*, the prosecution was not required to produce all of its identified witnesses, and there is no evidence in the record that would lead the Court to conclude that the prosecution did not act diligently to ensure that these witnesses would be present, even if they ultimately were not called. Thus, there was no basis for the trial court to hold a due diligence hearing, and it would have been futile for counsel to request either a hearing or dismissal of the entire case. Likewise, it would have been futile for counsel to request the missing witness instruction. As Petitioner sets forth, such an instruction allows the jury to infer that the missing witness's testimony would have been unfavorable to the prosecution's case. (Pet., ECF No. 1, PageID.58.) As discussed *supra*, there is no basis to conclude that Officer Garnsey and Stubbs would have testified in a way that was favorable to Petitioner's defense. "[O]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."). Petitioner, therefore, is not entitled to relief with respect to this portion of habeas ground X.

### 7.     Failure to Object to Amendment of Charge

As part of habeas ground VIII, Petitioner contends that counsel was ineffective for failing to object to the prosecutor's act of amending the charge to first-degree home invasion. (Pet., ECF No. 1, PageID.49.) Petitioner contends that "[h]ad defense counsel objected, the trial court would have been required to dismiss the additional counts." (*Id.*, PageID.52.) It appears that Petitioner faults counsel for not asserting the vindictive prosecution argument discussed *supra* in Part III.D.1.

The Court has already concluded that Petitioner's vindictive prosecution argument lacks merit. "[O]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley*, 706 F.3d at 752; *see also Mahdi*, 522 F.3d at 638. Moreover, the record reflects that counsel did file a response to the State's motion to amend along with the motion to quash. (ECF No. 10-1, PageID.265.) At the June 22, 2018, hearing regarding those motions, counsel argued that the bindover for second-degree home invasion was not appropriate because Petitioner had been lawfully present in the residence at issue. (ECF No. 10-6, PageID.312.) By arguing that there was no probable cause to support bindover on the second-degree home invasion charge, counsel implicitly suggested that amending the charge to a higher severity would not be supported as well. Here, Petitioner's suggestion that the trial court would have denied the motion to amend had counsel made any further objections is simply based upon speculation. Petitioner, therefore, is not entitled to relief with respect to this portion of habeas ground VIII.

### 8.     Ineffective Assistance of Appellate Counsel

As his ninth ground for relief, Petitioner contends that appellate counsel was ineffective for "neglect[ing] strong and critical issues which must be seen as significant and obvious." (Pet., ECF No. 1, PageID.53.) Specifically, Petitioner faults appellate counsel for not raising the arguments Petitioner now raises in habeas grounds III through VIII. (*Id.*, PageID.54.) Petitioner

asserted ineffective assistance of appellate counsel in his Rule 6.500 motion, and the trial court summarily rejected those assertions.

As thoroughly discussed *supra*, Petitioner's underlying claims lack merit. Thus, "appellate counsel's failure to raise [those] claim[s] on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("If trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."). Petitioner, therefore, is not entitled to relief with respect to habeas ground IX.

## IV.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of

Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment denying the petition and an order denying a certificate of appealability.


Dated:      July 19, 2024                       /s/ Robert J. Jonker
                                                Robert J. Jonker
                                                United States District Judge

47